IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-00256-BO

| | |
|---|---|
| DAVID EARL WHITAKER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant )<br>) | **ORDER** |

This matter is before the Court on the parties' cross-motions for motions for judgment on the pleadings [D.E. 26, 28]. For the reasons detailed below, plaintiff's motion is DENIED and defendant's motion is GRANTED. The decision of the Commissioner is AFFIRMED.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits and supplemental security income on December 13, 2010. In both applications, he alleged a disability beginning on November 15, 2010. The claims were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on July 10, 2012, via video-conference. In a decision dated October 1, 2012, the ALJ found that plaintiff was not disabled. (Tr. 14–22). The Appeals Council denied Plaintiff's request for review on October 15, 2013, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff commenced this action and filed a complaint pursuant to 42 U.S.C. 405(g) on December 17, 2013. [D.E. 5].

## MEDICAL HISTORY

Plaintiff was born on October 4, 1964. He attended special education classes and left school after ninth grade. He obtained his commercial driver's license and was employed as a long-distance truck driver, which is semi-skilled work. Plaintiff reported that he lives alone and was independent with self-care. He also reported that he could read and write, follow maps and maintain a log book. His activities of daily living include attending church and driving.

Plaintiff's medical history includes reports of radiating back pain and headaches. In November, 2010, plaintiff reported to the Emergency Room for chest pain and lightheadedness. He was admitted for acute myocardial infarction. It was also discovered that plaintiff suffered from uncontrolled diabetes after he reported that he had not taken his diabetes medication on two to three months. Plaintiff underwent triple bypass surgery on November 15, 2010. After discharge, he continued to experience chest pain. He had diagnoses of pancreatitis, pericarditis and gastritis.

Over several months, plaintiff continued to complain of radiating chest pain with movement. On August 4, 2011, he underwent surgery to remove two wires, at which time a bacterial infection at the site of the wires was discovered. Plaintiff was placed on antibiotics. After this surgery, plaintiff reported that his chest pain had improved. He was diagnosed with chronic heart failure stage C, New York Heart Association ("NYHA") class I.[1]

Plaintiff also reported vision problems as a result of his uncontrolled diabetes, but treatment notes indicate that there was no diabetic retinopathy and his vision was correctable with glasses.

---

[1] According to the American Heart Association ("AHA"), the most commonly used classification system for heart failure is the New York Heart Association ("NYHA") Functional Classification, which places patients in one of four categories based on how much they are limited during physical activity. Class I heart failure encompasses "[p]atients with cardiac disease but resulting in no limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea or anginal pain." *See Foster v. Colvin*, No. 6:13-CV-926, 2014 WL 3829016, at *3 n.2 (D.S.C. Aug. 4, 2014).

2

Plaintiff also complained of pain and numbness in his hands. He was diagnosed with polyneuropathy due to diabetes. He was also prescribed an exercise program and referred to a podiatrist for diabetic foot care. At a follow-up appointment in October, 2011, it was noted that his diabetes was stable but not ideally controlled, and he was experiencing no blurred vision.

Plaintiff underwent physical therapy from September, 2011 through November, 2011 for back pain. Plaintiff also stated that he experienced fatigue, but acknowledged that he had been non-complaint with his C-PAP therapy for his OSA. Medical records note that his fatigue was well-controlled with the C-PAP machine when he was compliant.

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the

3

Case 4:13-cv-00256-BO   Document 35   Filed 01/21/15   Page 3 of 12

claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

After finding that plaintiff had not engaged in any substantial gainful activity since his alleged onset date at step one, the ALJ determined that plaintiff's coronary artery disease; history of myocardial infarction; hypertension; obesity; diabetes mellitus; and obstructive sleep apnea ("OSA") were severe impairments at step two. (Tr. at 16). The ALJ then found that his impairments, alone or in combination, did not meet or equal a Listing impairment. (*Id.* at 17). The ALJ determined that Plaintiff had the RFC to perform a full range of light work. (*Id.* at 18). At step four, the ALJ concluded that Plaintiff was unable to perform his past work as a long-distance truck driver. At step five, the ALJ determined that, based on his age, education, work experience and RFC, a finding of "not disabled" was directed by Medical-Vocational Rule 202.18. (*Id.* at 21–22). Thus, the ALJ found that Plaintiff was not disabled. (*Id.* at 22).

*(A) Step three*

In the present case, plaintiff first argues that the ALJ erred in evaluating his conditions at step three. Specifically, he contends that the ALJ committed error by failing to consider his coronary

4

artery disease under Listing 4.04 which, he contends, is met or medically equaled. However, a finding that his impairment satisfies the criteria for Listing 4.04 cannot be made.

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any gainful activity at all. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or equal a Listing, the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a Listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see* SSR 83–19, 1983 WL 31248, at *23 (1983).

Even if an impairment does not meet the listing criteria, it can still satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(e)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. §§ 404.1526(a), 416.926(a) (providing that medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (citation omitted).

The Listing which plaintiff presently contends that he qualifies, 4.04[2] (ischemic heart disease) states:

---

[2] Plaintiff does not specify which subsection of Listing 4.04 he contends that he meets or equals. However, it appears that subsections A and B are inapplicable inasmuch as plaintiff has identified no evidence of "sign-or symptom-limited exercise tolerance test" or "three separate ischemic episodes, each requiring revascularization or not amenable to revascularization, within a consecutive 12–month period." 20 C.F.R. Part 404 Subpart P, App. 1, 4.04A, B.

5

> 4.04 Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3–4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
>
> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
>
> > 1. Angiographic evidence showing:
> >
> > > a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
> > >
> > > b. 70 percent or more narrowing of another nonbypassed coronary artery; or
> > >
> > > c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
> > >
> > > d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
> > >
> > > e. 70 percent or more narrowing of a bypass graft vessel; and
> >
> > 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Part 404 Subpart P, App. 1, 4.04C. It is the claimant who bears the burden of proving that his impairment meets a Listing. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Despite his burden, plaintiff has identified no evidence establishing that the medical evidence of record satisfies the criteria of this Listing. Although he recites his symptoms, the most relevant one—chest pain—appeared primarily related to infected wires. After their August, 2011 surgical removal, this issue seemed largely to have resolved.[3] Moreover, medical equivalence cannot

---

[3] Complaints of chest pain subsequent to the August, 2011 surgery revealed no acute findings by x-ray (January, 2013) and his chest pain was later diagnosed as coughing and muscle strain, and he was treated for bronchitis (July, 2013).

6

be established where, as here, plaintiff has reported he is independent in self-care and stated that he attends church, reads the Bible, drives, does work inside the house, such as cleaning, washing dishes and doing laundry, and does stuff outside the house. (Tr. at 33, 37, 40, 296). He also testified that he used to walk 5–6 blocks for exercise but stopped due to anxiety. (*Id.* at 33–34). Thus, even if he had provided medical evidence equal in severity to all the requirements of Listing, it is unlikely that his conditions could be found medically equal to Listing 4.04C where the evidence demonstrates no serious limitations in the ability to independently perform activities of daily living, as is required by 4.04C(2). Given this evidence, it cannot reasonably be found that the overall functional impact of his impairments is as severe as that of Listing 4.04C so as to establish medical equivalence.

While arguing that the ALJ failed to articulate why his medical impairments do not combine to meet a listing requirement, plaintiff fails to articulate why his medical impairments do, in fact, meet all of the elements of a given listed impairment. *Sullivan*, 493 U.S. at 530 ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.") (internal citation omitted). Accordingly, Plaintiff failed to meet its burden.

Nor is there error in the brevity of the ALJ's step three analysis. An ALJ is generally required not only to identify the relevant Listing, but also to compare the claimant's symptoms to the Listing's criteria. *Fraley v. Astrue*, No. 5:07-CV-141, 2009 WL 577261, at *3 (N.D.W. Va. Mar. 5, 2009) ("When determining whether a claimant's specific injury meets or equals a listed impairment, an ALJ must explain his or her rationale. This requires an ALJ to compare the plaintiff's actual symptoms to the requirements of any relevant listed impairments in more than a 'summary way.'" (citations omitted)); *Beckman v. Apfel*, No. Civ. A. WMN–99–3696, 2000 WL 1916316, at *9 (D. Md.

Dec. 15, 2000). However, in some cases, the point-by-point analysis is not necessary. "Meaningful review may be possible even absent the explicit step-by-step analysis . . . where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof." *Johnson v. Astrue*, No. 5:08–CV–515–FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) (unpublished). Therefore, when other portions of an ALJ's decision make clear the Listings the ALJ considered and the basis upon which the ALJ found that the claimant did not meet or equal them, the step-by-step analysis is not essential to judicial review. *See Smith v. Astrue*, 5:10–CV–399–FL, 2012 WL 928644, at *3 (E.D.N.C. Mar. 19, 2012).

Moreover, an ALJ is only required to cite specific elements of a Listing if "there is ample evidence in the record to support the determination that the impairments meets or is medically equivalent to one of the listed impairments." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999). An ALJ does not have to specifically mention every Listing when determining that an individual is not disabled so long as the essence of the ALJ's determination, that Plaintiff is not disabled, even under consideration of Listing, is supported by "substantial evidence." *Russell v. Chater*, No. 94-2731, 1995 WL 417576 (4th Cir. July 7, 1995) (distinguishing *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986)).

Here, the ALJ's discussion at step three as to whether plaintiff's impairments, alone or in combination, satisfied a Listing was short: "A review of the medical evidence indicates that none of the claimant's impairments meet or are equal in severity to any of the impairments listed in appendix I to Subpart P of 20 CFR 404, in particular Listing 4.04." (Tr. at 17). However, the ALJ's finding that plaintiff's coronary artery disease, either alone or in combination with his other impairments, did not meet or medically equal the Listing 4.04 criteria was not an error. As the medical evidence of record to support such a determination is lacking, the ALJ's failure to more thoroughly discuss this

particular Listing was not required. The ALJ's decision contains a thorough summary of the medical evidence, Plaintiff's symptoms, diagnoses and treatments and the impact of his conditions on his functional abilities. Thus, despite the brief analysis at step three, the sum of the ALJ's decision presents a detailed discussion of the evidence and sufficiently explains her consideration thereof, enabling a meaningful review.

Having failed to carry his burden of establishing that the medical evidence of record equals the Listing requirements, a step three determination that he is disabled cannot be made. Accordingly, plaintiff's argument on this issue lacks merit and is rejected.

*(B) RFC*

Plaintiff also contends that the ALJ erred in finding that he had the RFC to perform a full range of light work, without any additional limitations. He further argues that the ALJ failed to consider that he has significant limitations resulting from his coronary artery disease, diabetes and OSA. He maintains that he is limited in his abilities to walk, stand and lift, asserting that these activities often cause his chest pain. Plaintiff also submits that the ALJ failed to analyze his non-exertional limitations, and that, given his borderline intellectual functioning, he is limited to simple, routine, repetitive tasks.

"RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006) (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis ... [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental,

9

sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

Despite plaintiff's arguments to the contrary, the ALJ's RFC determination is supported by substantial evidence. With respect to the exertional limitations plaintiff maintains he has, the ALJ noted his complaints of chest wall pain resolved after the removal of two wires and treatment for an infection at their site. The ALJ further observed that plaintiff's OSA and diabetes were controlled when he was compliant with treatment. Although his complaints of pain and numbness were diagnosed as diabetic neuropathy, examination records noted that plaintiff had normal ambulation and full strength in his upper and lower extremities. Although Dr. Cabarrus, plaintiff's cardiologist, noted he was unable to work in his profession in January, 2011, by May of that year, Dr. Cabarrus stated that there was no indication that plaintiff was disabled. Dr. Cabarrus' opinion thus appears limited and would not satisfy the 12 month durational requirement for disability. Although plaintiff's primary care physician, Dr. Vigg, opined that his diabetic neuropathy caused significant and persistent disorganization of motor function in two extremities, the medical record as a whole did not support this assessment. As noted above, he retained full strength in his upper and lower extremities, and his activities of daily living were inconsistent with the limitations he alleged. Medical records also noted that his diabetes was poorly controlled when he was non-compliant with medication and diet. Further, no physician made any assessment of plaintiff's limited abilities to stand, walk or lift. Moreover, the state agency medical consultant opined that plaintiff retained an RFC for light work. As it is plaintiff's burden to put forth evidence not merely evidence of his impairments but his functional limitations resulting therefrom, which has not been shown, a finding that he has limitations in walking, standing or lifting greater than is contemplated by light work cannot be made. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (existence of a diagnosis, without establishing specific functional loss, is insufficient to prove disability).

With respect to mental limitations, the ALJ noted plaintiff's borderline intellectual functioning and determined that it was not a severe impairment. (Tr. at 16–17). Additionally, despite assignment to special education classes and leaving school after the ninth grade, plaintiff was able to read and write,[4] he obtained his commercial driver's license and worked as a long-distance truck driver, a semi-skilled occupation, without an accommodation. (*Id.*). This position required him to read maps and maintain a log. A limitation to simple, routine, repetitive tasks is a limitation that is neither assessed by a medical provider nor supported by in his past employment. Additionally, he testified that he left his last position no because of physical limitations but because he was told he would be able to purchase is the truck through a lease/purchase option after three months, but then not permitted to do so and quit. (Tr. at 51).

As plaintiff has failed to support his argument that the ALJ erred in the RFC determination by including additional limitations, and because the ALJ's RFC finding is supported by substantial evidence, plaintiff's argument on this issue lacks merit.

---

[4] During the hearing, plaintiff testified that he had trouble reading, but he also testified that he read the Bible, and maintained a driving log while working as a long-distance truck driver. His social history summary also noted he was able to read and write. (Tr. at 17).

11

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings [D.E. 26] is DENIED, the defendant's motion for judgment on the pleadings [D.E. 28] is GRANTED. The decision of the Commissioner is AFFIRMED.

SO ORDERED.

This __20__ day of January, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE